# EXHIBIT A

## AGREEMENT

This Agreement ("Agreement") is by and between Pinkerton Computer Consultants, Inc. (" Pinkerton") and the employee named below and is effective on the date of execution by both parties.

## RECITAL

A. Pinkerton is involved in an extremely competitive industry in which information and knowledge are valuable assets that must be protected.

B. This Agreement seeks to protect these assets, as well as other legitimate business interests, by addressing the issues of non-disclosure of confidential and/or proprietary information and trade secrets; rights in inventions; and employee obligations and restrictive covenants.

C. This Agreement was made available to me several days prior to the date hereof so as to provide me with an adequate amount of time in which to read the entire Agreement and review its provisions with my counsel and advisors.

D. The importance of the matters that are the subject of this Agreement was explained to me by Pinkerton.

E. Pinkerton has given me the opportunity to inquire as to the meaning of the provisions of this Agreement and has adequately answered all questions I have posed to Pinkerton.

F. I understand the meaning and effect of the terms of this Agreement, and understand that agreement to the terms set forth herein is a condition of my employment or continued employment with Pinkerton.

**NOW, THEREFORE,** in consideration of the covenants herein and for other good and valuable consideration, I hereby covenant and agree with Pinkerton as follows:

Trade Secrets, Confidential Information and Pinkerton Property.

1. I acknowledge that my employment with Pinkerton has given or will give me access to certain trade secrets and confidential and /or proprietary information belonging to Pinkerton including, but not limited to, information pertaining to current or former employees, information pertaining to hires, prospective hires or potential hires, reports, customer lists, customer prospect material, price lists, rate structures, responses to requests for proposals, presentations, methodologies and software owned either by Pinkerton, or developed by Pinkerton for any of its clients, whether electronically and/or in hard (all referred to as "Company Confidential Information").

2. I understand that I may use Company Confidential Information described in paragraph 1 only in the ordinary course of my employment with Pinkerton. I also understand that I may disclose Company Confidential Information described in paragraph 1 to others only when authorized to do so and only when access to this Company Confidential Information is necessary in the ordinary course of employment by, on behalf of or in partnership with Pinkerton.

3. I understand that Pinkerton retains exclusive rights in Company Confidential Information described in paragraph 1. I understand that I have no right to edit, copy, remove, distribute, create derivative works or publish any such Company Confidential Information in any form and medium, whether electronically or in hard copy and whether alone or as part of a collective work, expect as necessary in the ordinary course of my employment with Pinkerton.

4. At the termination of employment I will not, without the express written authorization of an officer (Vice President or higher) of Pinkerton, take with me the original or any copy (in any form or medium, whether electronically or in hard copy) of any Company Confidential Information and/or other Pinkerton information not readily available to the public in any form as defined under paragraph 1. I will promptly deliver to Pinkerton all such material held by me.

5. At the termination of employment I will return to Pinkerton all property and/or other equipment provided to me during the course of my employment.

Works Made for Hire and Inventions.

6. I understand and agree that all inventions, computer programs and the like created or conceived by me during the course of my employment (whether solely or jointly with others) either for use by Pinkerton or which could be used by Pinkerton in furtherance of its business activity are "Works Made for Hire", belongs solely to Pinkerton, and are entitled to the same protections as Company Confidential Information.

7. I agree to sign all papers, to execute all oaths and to do everything necessary and proper to protect Pinkerton's title to Works Made for Hire and to enable Pinkerton to apply for and obtain, maintain and enforce US and foreign patents or copyrights thereof, but without expense to me.

Employee Obligations and Restrictive Covenants.

8. I represent that, expect as I have disclosed in writing to Pinkerton and attached to a copy of this Employment Agreement, my performance of all the terms of this Agreement and as an employee of Pinkerton does not and will not breach any agreement or obligation to keep in confidence proprietary information, knowledge or data, belonging to any previous employer or others, acquired by me in confidence or in trust prior to or during my employment with Pinkerton, and I will

not disclose to Pinkerton or induce Pinkerton to use any such confidential or proprietary information or material.

9.  I will, during the period of my employment by Pinkerton, devote my full time and best efforts to Pinkerton's business and will not, without the express written permission of Pinkerton, engage in any business activities, which would conflict with my duties.  Pinkerton agrees that such permission will not be unreasonably withheld so long as the requested activity is not similar to or does not conflict with the primary business of Pinkerton.  Furthermore, I expressly agree that during said period, I will not, directly or indirectly, work for or assist in any way any competitor of Pinkerton.

10. I agree that after my employment with Pinkerton ends, for a period of twelve (12) months immediately thereafter, I will not hire, attempt to hire, solicit, or attempt to solicit to hire, or assist another or participate in any manner in the hiring or soliciting for hire, of any person *currently* employed by Pinkerton within one (1) year prior to the termination of my employment.

11. I agree that after my employment with Pinkerton ends, for a period of twelve (12) months, I will not "compete" with Pinkerton.  For purpose of this Agreement, "competing" is defined as soliciting or doing business with, directly or indirectly, any present or past customer of Pinkerton, with whom I have contact in connection with any business activity, but is limited to the type of services provided by Pinkerton to any of its customers during the term of my employment.

Miscellaneous.

12. I understand that neither Agreement nor any other document I have signed regarding my employment with Pinkerton constitutes an implied or written employment contract and that my employment with Pinkerton is on an "at will" basis.  Accordingly, I understand that Pinkerton or I may terminate my employment at any time, for any or no reason, with or without prior notice.

13. I understand that any breach of the above terms would cause irreparable harm to Pinkerton.  Therefore, in the event of any such breach, Pinkerton shall have the right to appropriate equitable relief, including but not limited to, injunctive relief or specific performance, as well as any and all other appropriate remedies of law.

14. Any amendment to or modification of the Agreement, and any waiver of any provision hereof, shall be in writing.  Any waiver by Pinkerton of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach hereof.

15. I agree that each provision herein shall be treated as a separate and independent clause, and the unenforceability of any one clause shall in no way impair the enforceability of any of the other clauses herein.  Moreover, if one or more of the

provisions contained in this Agreement shall for any reason by held to be excessively broad as to scope, activity or subject so as to be unenforceable at law, such provision or provisions shall be construed by the appropriate judicial body by limiting and reducing it or them, so as to be enforceable to the maximum extent compatible with the applicable law as it shall then appear. Upon termination of my employment for any reason I agree that the terms and conditions of this Agreement shall continue to be of full force and effect.

16. This agreement shall be governed by and construed in accordance with the internal laws (and not the laws of conflicts) of the Commonwealth of Massachusetts.

17. The term "Pinkerton" shall include Pinkerton Computer Consultants, Inc. and any of its subsidiaries, subdivisions and affiliates. Pinkerton shall have the right to assign this Agreement to its successors and assigns, and all covenants and agreement hereunder shall inure to the benefit of and be enforceable by said successors or assigns.

18. *Any material change to the employee's agreed to compensation plan will be deemed a material breach of this agreement and render the entire agreement null and void.*

19. *If the employee is terminated by the employer for convenience (i.e. corporate layoff, corporate restructuring, etc.) this agreement will not be enforced by the employer.*

I have read and agree to the above terms and conditions.

Signature: _____

Printed Name: PAUL D. SANFORD

Date: 12/31/02

Received by

By: Patrick Branagn

Printed Name: Patrick Branagan

Date: 12/31/02

# EXHIBIT B

## Confidential Information Agreement

The undersigned employee (hereinafter called "employee"), in consideration of initial or continued employment with Kforce, Inc. (hereinafter "Kforce"), covenants and agrees as follows:

## Confidentiality

Employee understands and agrees that in the course of employment with Kforce, employee will receive and become aware of information, projects, practices, customers and customer contacts, potential customers and candidates, candidates, methodologies and management philosophy relating to Kforce's business.  Employee hereby acknowledges the sensitivity and confidential nature of such information, and covenants and agrees to keep all such information strictly confidential.  In this regard, employee shall not at any time or in any manner, either directly or indirectly, divulge, disclose, communicate, or use confidential information obtained or learned while employed by Kforce, except as necessary, appropriate and authorized in connection with employee's legitimate duties of employment.

Employee understands and agrees that employee's obligation to maintain the confidentiality of such information obtained while employed by Kforce shall continue beyond the termination of employee's employment.

## Trading of Company Stock

Employee acknowledges that he/she has been made aware that under the federal securities laws, it is illegal to buy or sell company securities if employee is aware of material information about the company that has not been publicly disclosed. It is also illegal to recommend trading to others or to pass information along to others who may trade in company securities.  Violations may result in civil and criminal penalties, including fines and jail sentences. Kforce strictly prohibits all such activities. Any questions on a particular stock transaction can be referred to the Treasurer of Kforce.

COMPLIANCE WITH THIS POLICY IS REQUIRED.  FAILURE TO COMPLY WITH THIS POLICY IS A BASIS FOR EMPLOYEES TERMINATION OF EMPLOYMENT WITH THE COMPANY. PLEASE SIGN AND DATE WHERE INDICATED BELOW AND RETURN TO THE COMPANY.  BY SIGNING THIS FORM, YOU ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTAND THIS POLICY AND AGREE TO COMPLY WITH IT.

_____
Signature

PAUL D. SANFORD
Printed Name

2/1/06
Date

# EXHIBIT C

# CODE OF ETHICS AND BUSINESS CONDUCT

**Purpose of this Code**

We have prepared this Code of Ethics and Business Conduct to help you understand Kforce's standards of ethical business practices. It is part of who we are and what we represent, and should be read in conjunction with our Mission Statement and Statement of Core Values. This Code also applies to all consultants, agents and other representatives retained by the Company.

The principles set forth in this Code describe how we should behave. Kforce will conduct its operations consistent with the highest business, legal and ethical considerations. Compliance with these principles is vital. Personal responsibility is at the core of our principles and culture. We expect everyone associated with Kforce not only to know right from wrong, but also to always choose right over wrong. In every business decision we make, we must follow the ethics and compliance principles of the Company. It is also our responsibility to report anything we observe or know about that might violate these principles.

No Code could ever anticipate every ethical decision we may face in business. So whenever you are in doubt about any matter that may have ethical implications, you should seek guidance within the Company or individual business unit. You may also seek guidance from our Chief Compliance Officer (Joe Liberatore) or Corporate Human Resources.

Violation of this Code is a serious matter and could subject you or Kforce to civil liability or even criminal prosecution. It is important that you read this Code carefully and ask questions about anything you do not understand. Each of us must understand and accept our personal responsibility in preserving and enhancing Kforce's reputation for integrity. In addition to this Code, refer to training module three on Professional Standards located on the KnowledgeBank. It will provide additional detailed guidance on how to incorporate our Code of Conduct into your daily activities.

**Obey the Law**

We will conduct our business in accordance with all applicable Federal and State laws and regulations. Violating or not complying with Federal and State law compromises the Company's ethical responsibilities, jeopardizes existing contracts, and subjects the Company to potential fines and penalties. Anyone found willfully violating the law will be subject to disciplinary action up to and including termination.

**Promote a Positive Work Environment**

All employees want and deserve a work place where they feel respected, satisfied, and appreciated. Harassment or discrimination of any kind including but not limited to race, color, religion, gender, age, national origin, disability, veteran, marital status, or other protected status, is unacceptable in our work place environment.

Providing an environment that supports the honesty, integrity, trust, responsibility, and citizenship of every employee permits us the opportunity to achieve excellence in our work place. While everyone who works for the Company must contribute to the creation and maintenance of such an environment, our executives and management personnel assume special responsibility for fostering a context for work that will bring out the best in all of us.

**Work Safely: Protect Yourself and Your Fellow Employees**

We are committed to providing a drug-free, safe, and healthy work environment. Each of us is responsible for compliance with environmental, health, and safety laws and regulations. Observe posted warnings and regulations. Report immediately to the appropriate management any accident or injury sustained on the job, or any environmental or safety concern you may have.

**You have an Obligation to the Candidate**

Strive for the right of all individuals who want the dignity of work to choose their field of endeavor and utilize their abilities and talents for personal fulfillment. Extend professional services to all qualified employed and unemployed candidates regardless of race, color, religion, gender, age, national origin, disability, veteran, marital status, or other protected status.

**You have a Responsibility to the Client Organization**

Represent the best interest of the client by acting as an effective extension of the client's recruitment effort, and respect every confidence entrusted by client-companies.

**Keep Accurate and Complete Records**

We must maintain accurate and complete Company records. Transactions between the Company and candidates, client organizations, vendors and all external parties must be promptly and accurately entered into our systems. No one should rationalize or even consider misrepresenting transactions or facts, or falsifying records. It is illegal, will not be tolerated, and will result in disciplinary action.

**Protect Proprietary Information**

Proprietary Company information may not be disclosed to anyone without proper authorization. Keep proprietary documents protected and secure. In the course of normal business activities, suppliers, customers, and competitors may sometimes divulge to you information that is proprietary to their business. Respect these confidences.

**Obtain and Use Company and Client Assets Wisely**

Proper use of company and client property, facilities, and equipment is your responsibility. Use and maintain these assets with the utmost care and respect, guarding against waste and abuse. Be cost-conscious and alert to opportunities for improving performance while reducing costs. The use of company time, material, or facilities for purposes not directly related to company business, or the removal or borrowing of company property without permission, is prohibited.

**Do Not Engage in Speculative or Insider Trading**

It is against the law for employees to buy or sell the Company's stock based on "insider" information about or involving the Company. Play it safe: Do not speculate in the securities of the Company when you are aware of information affecting the Company's business that has not been publicly released or in situations where trading would call your judgment into question. This includes all varieties of stock trading such as options, puts and calls, straddles, selling short, etc. Two simple rules can help protect you in this area: (1) Do not use non-public information for personal gain; and (2) Do not pass along such information to someone else who has no need to know.

This guidance also applies to the securities of other companies (client organizations, vendors, subcontractors, etc.) for which you receive information in the course of your employment at the Company.

**Gifts, Favors, Entertainment and Payments**

Employees should not seek or accept for themselves any gifts, favors, entertainment, or payments without a legitimate business purpose. Employees may accept common courtesies usually associated with customary business practices. However, any item received with a value greater than $75 should be reported to your supervisor. No one at any time should offer to clients or vendors, any gifts, favors or payments that may be construed as a bribe or payoff. Any item offered to a client with a value greater than $50 must first have your supervisor's approval.

**For More Information**

In order to support a comprehensive Ethics and Business Conduct Program, the Company has developed an education and communication program. In particular, you should read and understand the training module entitled Professional Standards on the KnowledgeBank.

This program has been developed to provide employees with job-specific information to raise their level of awareness and sensitivity to key issues.

If you wish to discuss a matter of concern, you are encouraged to contact your supervisor, Corporate Human Resources, the Chief Compliance Officer or the Chief Talent Officer (a member of the Company's Executive Committee).

**Responsibilities – Reporting**

Each employee of Kforce is expected to carry out his or her work in accordance with our professional standards of conduct. Further, all employees are urged to direct any questions or concerns about the Company's activities or these standards to their supervisor, Corporate Human Resources, the Chief Compliance Officer, or our Chief Talent Officer, without delay. Any employee who suspects that a violation of this Code has occurred is obligated to report it, and such employee will not be discriminated against in terms and conditions of employment.

The Code is not all-encompassing, and questions about situations not discussed in the Code may also be addressed to the Corporate Legal Department, Corporate Human Resources, or your supervisor. Questions or information concerning possible violations of this Code or our professional standards can be provided by calling our Chief Compliance Officer in Corporate Human Resources at 813-552-1469.

*I have read and understand the Code of Ethics and Business Conduct Policy.*

| | | |
|---|---|---|
| Signature | PAUL D. SANFORD<br>Print Name | 2/1/06<br>Date |

# EXHIBIT D

ACCEPTABLE USE POLICY

## I. Overview

Kforce has invested heavily into electronic and communications resources that provide the company with a competitive edge in the marketplace. Employees are expected to exercise good judgment and caution when using these resources. Accordingly, employees are expected to adhere to policies governing the acceptable use of Kforce electronic resources including computers, fax, and telephones.

## II. Purpose

This policy establishes rules governing the acceptable use of these Kforce resources. These rules are specifically designed to protect us from inappropriate uses that expose Kforce computers to viruses, hackers, and possible legal issues.

## III. Scope

This policy applies to all Kforce employees and associates who use electronic resources including computers, fax, and telephones owned or leased by Kforce. Changes to this policy must be reviewed by the Executive Committee and their documented approval must be received prior to policy revision.

## IV. Policy

### General Use and Ownership

- Computing resources such as hardware and software, computer files and email, and Internet services are the property of Kforce. Kforce reserves the right to access, retrieve, and read any information composed, sent, or received through its computer systems.

- Employees have no expectation of personal privacy rights in any data, information, image or file created, received or sent using Company owned property.

### Acceptable Use

- Use due care to protect proprietary and confidential hard and soft copy information for which they have knowledge and access.

- Adhere to the Kforce Password Policy. It is important that employees do not transfer or share their logon accounts and passwords; or permit non-Kforce employees to use company property.

- Employees are expected to log off or lock computers when ever they leave their work areas for any reason. Alternatively, password protected screensavers may also be used with the automatic activation feature set at 10 minutes or less.

- Employees are expected to protect all computing equipment assigned to them, or otherwise under their control, from theft or damage. Special attention must be given to protecting laptops and other forms of portable computers.

- Employees must use extreme caution when opening e-mail attachments received from unknown senders, which may contain viruses.

- Employees will only use software owned and licensed by Kforce on company systems, and not tamper with computer configuration settings.

### Unacceptable Use

- Employees must not attempt to circumvent security or administrative access controls of Kforce systems. Employees must also not assist someone else or request someone else to perform such actions.

- Sending or posting discriminatory, harassing, or threatening messages or images

- Using the organization's time and resources for personal gain
- Stealing, using, or disclosing someone else's code or password

- Copying, pirating, or downloading software and electronic files. Only software that is specifically owned and licensed by Kforce is authorized for use.

- Kforce considers software piracy a serious violation of company policy and does not condone nor tolerate the use of unlicensed software on any company equipment. Users will use only authorized and properly licensed software on company computers and related equipment. No software should be installed until a proper license is obtained and assigned to a specific computer. At no time should unapproved or unlicensed software be downloaded or installed. Personal software should not be installed on any Kforce or client company equipment, nor should Kforce or client-purchased software be installed on personal equipment. Only authorized Kforce or client personnel may perform software installations

- Sending or posting confidential material, trade secrets, or proprietary information to outside sources specifically authorized by Kforce.

- The unauthorized use, installation, copying, or distribution of copyrighted, trademarked, or patented material from the Internet is expressly prohibited. As a general rule, if an employee did not create material, does not own the rights to it, or has not gotten authorization for its use, it should not be put on the Internet. Employees are also responsible for ensuring that the person sending any material over the Internet has appropriate distribution rights. This also includes copyrighted music and other forms of entertainment media.

- Failing to observe licensing agreements

- Engaging in unauthorized transactions that may incur a cost to Kforce

- Sending or posting messages or material that could damage the Kforce image or reputation

- Participating in the viewing or exchange of pornography or obscene materials

- Sending or posting messages that defame or slander other individuals

- Attempting to break into the computer system of another organization or person

- Sending or posting chain letters, solicitations, or advertisements not related to business purposes or activities

- Using Kforce Internet or email resources for any activity that violates Kforce policies or applicable state and Federal laws is strictly prohibited

- political causes or activities, religious activities or any sort of gambling

- Jeopardizing the security of Kforce electronic communications systems

- Sending or posting messages that disparage another organization's products or services

- Engaging in any other illegal activities.

## V. Enforcement

Kforce electronic and communications systems are restricted to Kforce employees only and are monitored for security, performance, and other purposes. Users are advised they have no explicit or implicit expectation of privacy. Monitoring includes periodic security testing by authorized personnel to verify the security of systems. Information gathered during monitoring may be examined and recorded to detect unauthorized or improper use of systems. Although Kforce reserves the right to monitor it electronic and communications resources, it is not obliged to do so. Abuse of Kforce electronic and communications resources in violation of Kforce policies or applicable state and Federal laws can result in disciplinary action, up to and including termination of employment.

*I have read and understand the Acceptable User Policy.*

_____        PAUL D. SANFORD .        2/1/a
Signature                        Print Name                Date

**EXHIBIT E**

## EMPLOYMENT, NON-DISCLOSURE AND NON-SOLICITATION AGREEMENT

THIS AGREEMENT is entered into between Kforce Inc., (hereinafter called the "FIRM") and Johna Toner (hereinafter called the "EMPLOYEE"), on the 27th day of December 2007. In consideration of the EMPLOYEE's employment or continued employment with the FIRM; the expenditures made by the FIRM in developing trade secrets, confidential information, and client, candidate and employee relationships; the training provided or made available to the EMPLOYEE; the access to the FIRM's trade secrets, confidential information, clients, candidates and employees that will be provided to the EMPLOYEE; as well as the other terms and conditions set forth herein, the FIRM and the EMPLOYEE agree as follows:

1.   **Employment.**   The FIRM hereby employs or continues to employ the EMPLOYEE and the EMPLOYEE hereby accepts or continues to accept employment upon the terms and conditions hereinafter set forth.   The EMPLOYEE shall be subject to the policies, practices, procedures, and business directives that the FIRM adopts and amends from time to time.

2. **Extent of Services.** The EMPLOYEE shall exclusively devote his/her full business time, attention, energy, loyalty and best efforts to the business of the FIRM, and shall not, during the time this Agreement is in effect, engage in any other business activity, whether or not such other business activity is pursued for gain, profit, or other pecuniary advantage, unless such business is fully disclosed to and approved in writing by an authorized representative of the FIRM.  However, the foregoing restriction shall not be construed as preventing the EMPLOYEE from investing his/her assets in such other form or manner as will not require any services on the part of the EMPLOYEE in the operation of the affairs of the companies in which such investments are made.

3. **Duties.** The EMPLOYEE is engaged to perform such duties as the FIRM may assign from time to time, including duties necessary or incidental to the operation of a personnel placement/staffing services firm.  The precise services of the EMPLOYEE may be extended or curtailed, from time to time, at the direction of the FIRM.  In the performance of all his/her duties, the EMPLOYEE agrees to abide by the rules, policies and standards in effect from time to time and/or which may be practiced by the FIRM in its operations.

4. **FIRM Policies and Practices.** The FIRM may, at any time and at its sole discretion, terminate, limit or modify its policies and practices, including compensation and benefit plans, and the EMPLOYEE shall have no right to the continuation of such policies, practices or plans in any particular form or for any particular period.

5. **Termination of Employment.** The term of employment of the EMPLOYEE, or the continuation of employment of the EMPLOYEE, shall be at the will of the EMPLOYEE or the FIRM.  Either party may terminate this Agreement immediately, for any reason, with or without cause.

6.   **Confidential Information.**   The EMPLOYEE recognizes and acknowledges that the FIRM has, through the expenditure of substantial time, effort and money, developed, compiled and/or acquired certain confidential information and trade secrets which are of great value to the FIRM in its operations. The EMPLOYEE further acknowledges and understands that in the course of performing his/her duties for the FIRM, he/she will receive and/or have access to the trade secrets and other confidential information of the FIRM.

The EMPLOYEE agrees that he/she will not make any use of, take, download, publish or disclose, or authorize anyone to use, take, publish or disclose, any of the FIRM's trade secrets or other confidential information, for any reason, except to the extent authorized and required in the course of performing his/her duties on behalf of the FIRM. Upon request of the FIRM, the EMPLOYEE will promptly return or destroy all expressions of trade secrets and confidential information in his/her possession and control. EMPLOYEE shall cooperate with the FIRM's efforts to verify such return or destruction.

As used herein, the term "trade secrets and other confidential information" shall include, without limitation: (a) client or prospective client lists and client or prospective client contact information (including but not limited to business cards, contact persons, and hiring mangers);  (b) client job openings and job orders and client pricing information; (c) actual or prospective applicant, employment candidate, employee or consultant lists; (d) actual or prospective applicant, employment candidate, employee or consultant qualifications, contact information, and resumes; (e) actual or prospective applicant, employment candidate, employee or consultant compensation and benefits; and (f) other client, applicant, employment candidate, employee or consultant data or information.

**7. Return of FIRM Property.** All information, data, lists, files, business forms, manuals, policies, training materials, communications and all other intellectual property compiled, maintained, received or used by the EMPLOYEE in the course of his/her employment with the FIRM is and shall remain at all times the exclusive property of the FIRM. Upon termination of the EMPLOYEE"s employment for any reason, the EMPLOYEE shall immediately return to the FIRM any and all tangible and intangible property of the FIRM, in whatever form, in the EMPLOYEE's possession, custody or control, including but not limited to trade secrets and confidential information as defined in the preceding section.

**8. Non-Solicitation Covenants.** a) <u>Covenants relating to clients</u>: the EMPLOYEE agrees that upon termination of his/her employment for any reason, the EMPLOYEE will not, for a period of twelve (12) months from the date of termination, directly or indirectly solicit or accept business that is competitive with the FIRM from any client with whom the EMPLOYEE had contact while employed by the FIRM, nor will the EMPLOYEE for such period directly or indirectly attempt to divert or assist others to divert any such clients' business from the FIRM to a competitor.

b) <u>Covenants relating to staffing candidates, applicants, temporary employees and consultants</u>: the EMPLOYEE further agrees that upon termination of his/her employment for any reason, the EMPLOYEE will not, for a period of twelve (12) months from the date of termination, directly or indirectly solicit, recruit, hire or place on assignment any staffing candidate, applicant, temporary employee or consultant with whom the EMPLOYEE had contact while employed by the FIRM, nor will EMPLOYEE directly or indirectly attempt to divert or assist others to divert such candidates, applicants, temporary employees and consultants from the FIRM.

c) <u>Covenants relating to core employees</u>: The EMPLOYEE further agrees that upon termination of his/her employment for any reason the EMPLOYEE will not, for a period of twelve (12) months from the date of termination directly or indirectly solicit any of the FIRM's core (internal) employees for employment with any other person, company, firm, or business, nor will EMPLOYEE directly or indirectly attempt to divert or assist others to divert such employees from the FIRM.

**9. Use of the FIRM'S Name or Trademarks.** Following termination of the EMPLOYEE's employment with the FIRM, the EMPLOYEE shall not use or permit the use of the FIRM's name or trademarks in any advertising, notice, solicitation or other business materials, including but not limited to indications that the EMPLOYEE was formerly employed by the FIRM.

**10. Legal Obligations to Others.** The EMPLOYEE represents, warrants and covenants that he/she has not taken, utilized or disclosed, and will not take, utilize or disclose, any trade secrets or confidential information of any previous employer, nor will the EMPLOYEE engage in activity that violates a valid and enforceable legal obligation owed to such previous employer.

**11. Enforcement.** The EMPLOYEE agrees that, in the event of a breach or threatened breach by the EMPLOYEE of any of the provisions or covenants contained in paragraphs 6, 7, 8, and 9 of this Agreement, the FIRM shall be entitled to the entry of a temporary, preliminary or permanent injunction (without any bond or other security being required) against the EMPLOYEE in any suit in equity brought for the purpose of enforcing such provisions or covenants. The consent to and the availability of an injunction as set forth above shall not preclude or prevent the FIRM from seeking or recovering monetary damages under appropriate circumstances, or pursuing other appropriate remedies. The provisions of this Agreement shall not be construed as limiting any of the FIRM's rights under the Uniform Trade Secrets Act, as adopted, or under any other laws (whether statutory or common law) including, but not limited to, laws relating to confidential information, unfair competition, computer misconduct, and fiduciary duty.

The existence of any claims or cause of action that the EMPLOYEE may have against the FIRM, whether predicated upon a breach of any part of this Agreement by the FIRM or otherwise, shall not constitute a defense to the enforcement by the FIRM of any of the covenants and obligations contained in paragraphs 6, 7, 8 and 9 of this Agreement.

**12. Assignment.** The rights and obligations of the FIRM under this Agreement may be assigned and shall inure to the benefit of and be binding upon the successors and assigns of the FIRM. EMPLOYEE expressly acknowledges that the provisions of paragraphs 6, 7, 8, 9 and 11 of this Agreement are intended to be enforceable by any such successors and assigns as well as by any entity affiliated with the FIRM. In the event the EMPLOYEE is transferred to another location or assigned to a current or future subsidiary or separate business unit affiliated with the FIRM, this Agreement shall remain in full force and effect. The rights and obligations of the EMPLOYEE hereunder may not be assigned.

**13. Waiver of Breach.** The waiver of the FIRM of a breach of any provision of this Agreement by the EMPLOYEE, or a breach of any provisions in similar agreements between the FIRM and any other employee, shall not operate or be construed as a waiver of any subsequent breach by the EMPLOYEE.

**14. Invalidity of Provisions.** If any covenant or part thereof, or other provision of this Agreement is invalid, illegal or incapable of being enforced, by reason of any rule of law or public policy, all other conditions and provisions of this Agreement shall, nevertheless, remain in full force and effect, and no covenant or provision shall be deemed dependent upon any covenant or provision unless so expressed herein. If, moreover, any provision of this Agreement shall for any reason be held to be excessively broad as to time, geographical scope, activity or subject, it shall be deemed amended to the extent necessary for such provision to be held valid and enforceable.

**15.   Reasonable and Necessary Restrictions.**  The EMPLOYEE agrees that the covenants and restrictions contained in this Agreement are both reasonable and necessary.

**16. Entire Agreement.**  This instrument contains the entire agreement of the parties on the matters contained herein. This Agreement may not be waived, changed or modified orally but only in writing by an amendment hereto signed by the parties.

**17. Survival.** It is mutually agreed that the terms of this Agreement shall remain in full force and effect regardless of any changes that may subsequently occur in the EMPLOYEE's remuneration, location, title, duties and/or scope of responsibility.  The provisions of paragraphs 6, 7, 8, 9 and 11 shall survive the termination of this Agreement.   The EMPLOYEE agrees that, following the EMPLOYEE's termination of employment from the FIRM, the FIRM, in its discretion, may notify any subsequent employer or prospective employer of the EMPLOYEE of the terms and obligations of this Agreement.

**18. Voluntary Agreement/No Inducements.**  The EMPLOYEE hereby acknowledges and represents that the EMPLOYEE (a) has fully and carefully read this Agreement prior to signing it; (b) has been, or has had the opportunity to be, advised by independent legal counsel of his/her own choice as to the legal effect and meaning of each of the terms and conditions of this Agreement; and (c) is signing and entering into this Agreement as a free and voluntary act without duress or undue pressure or influence of any kind or nature whatsoever and has not relied on any promises, representations or warranties regarding the subject matter hereof other than as set forth in this Agreement.

IN WITNESS WHEREOF, the parties have executed this AGREEMENT effective on the date first set forth above.

FIRM:      Kforce

By:  _____
Douglas Rich, VP of Talent Mgmt & Development

EMPLOYEE:          Johna Toner

_____
(signature)

_____
(printed name)

_____
Date

Location:  3910 – Boston IT Flex